WO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Vianca Lizarraga, | ) |
| Plaintiff, | ) CV 06-474 TUC DCB |
| v. | ) |
| City of Nogales Arizona, and Ramon F. Borbon and Esmeralda Borbon, husband and wife, | ) |
| | ) **ORDER** |
| Defendants. | ) |

On November 1, 2007, the Court stayed discovery in this case until after the criminal trial, which is set for January 15, 2008. Defendant Borbon seeks reconsideration of the stay. Defendant agrees that "the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence," *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), and should not be used to ask a court "to rethink what the court ha[s] already thought through--rightly or wrongly". *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *see also, Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 605 F. Supp. 6, 7 (N.D. Ill. 1983). Nevertheless, Defendant asks this Court to rethink its ruling; he reurges the arguments already presented and rejected by this Court.

Specifically, Defendant complains that if he is convicted in the criminal proceeding his ability to defend this case will be impacted because the reservation of rights by the City's insurance carrier will end, and Plaintiff will attempt to use the criminal conviction against him, *res judicata*, in this civil proceeding. Defendant complains that this Court ignored the expert opinion from Dr. Donnelly, which contradicted Plaintiff's treating psychologist's

opinion regarding Plaintiff's fragile mental condition and described the DVD of the deposition given by the Plaintiff on April 25, 2006, as not relevant to her current mental condition. Primarily, however, the Defendant argues that this Court erred when it granted the stay because evidence from discovery in this case was finding its way into the criminal proceeding. Defendant not only argues that he has a right to such use,[1] but he argues he is prejudiced by the stay because it will prevent him from obtaining information that may be exculpatory, but not disclosed by the Government in the criminal case. Defendant suggests that civil discovery is necessary so the criminal court can ascertain if sanctions should be imposed against the Government.

Here, the concern is that discovery in a civil case is finding its way to a criminal case. The civil rules of procedure are routinely construed in favor of broad discovery, whereas, the criminal rules allow only limited discovery. *State of Minnesota v. Deal*, 2007 WL 3226203, * 6-7 (Minn. November 1, 2007.) For example, a criminal defendant is not allowed to take depositions for the purpose of gathering information, unless a witness will be unavailable at trial. *Id.* at * 7. This rule prevents harassment of state witnesses, reduces delay in the criminal process, and avoids the possible "chilling effect on the willingness of witnesses to come forward." *Id.* (citations omitted).

In *Deal*, the Supreme Court for the State of Minnesota considered as a matter of first impression whether it should limit a criminal defendant's use of civil discovery when the pending civil and criminal proceeding involved overlapping evidentiary material. The state court looked to federal case law for guidance because its state procedural law mirrored the federal rules. *Id.* at * 7. "Federal courts have consistently held that there is "good cause" to issue a protective order staying civil discovery when a related criminal proceeding is pending in order to prevent the defendant's use of broad civil discovery to sidestep the much more

---

[1] Defendant relies on cases that involve discovery from one civil case being used in another civil case. *See Dove v. Atlantic Capital*, 963 F.2d 15 (2nd Cir. 1992).

limited discovery available in the criminal proceeding." *Id. (*citing *see, Peden v. United States,* 512 F.2d 1099, 1103 (1975) ("[I]t has long been a practice to freeze civil proceedings when a criminal prosecution involving the same facts is warming up or under way."). *Id.* at *7.

Three policy considerations, "peculiar to criminal law," justify the narrow scope of discovery in criminal proceedings:

> First, there has been a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, it is supposed that revealing the identity of confidential government informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government. Finally, it is argued that since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain the opportunity to surprise the prosecution whereas the state would be unable to obtain additional facts. This procedural advantage over the prosecution is thought to be undesirable in light of the defendant's existing advantages. The validity of each of these objections must be appraised in each of the situations in which the defendant may seek discovery and must be weighed against the importance to the defendant of the disclosure.

*Id.* (citing *Campbell*, 307 F.2d at 487 (quoting *Developments in the Law-Discovery,* 74 Harv. L. Rev. 940, 1052 (1961)).

Importantly, *Deal* addresses one of the five factors the courts in the Ninth Circuit consider for granting or denying a stay: the interest of the public in the pending civil and criminal litigation. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995) (other factors are: the interest to proceed expeditiously with the civil litigation and the prejudice of a delay; the burden the civil proceeding may impose; the convenience of the court in case management and efficient use of judicial resources, and the interests of persons not parties to the civil litigation). In *Deal*, the court looked at whether the integrity of the criminal proceeding might be compromised by a defendant's access to the broad scope of civil discovery. "The more the issues overlap in the civil and criminal proceedings, the more likely that allowing civil discovery will jeopardize the integrity of the criminal proceeding." *Id.* at *9 (citations omitted). "Further, because court convenience deserves "substantial

weight,". . . "[t]he potential dispositive or clarifying effect of the resolution of [the] criminal case" on the civil proceeding also may weigh in favor of a stay." *Id.* (citations omitted). "Finally, the length of time of the stay is a factor in considering the prejudice to the party opposing the stay. Risk of prejudice is lessened after the criminal indictment because of the requirement of a speedy trial, which limits the duration of the stay." *Id.* (citations omitted).

"A court should be flexible when a stay of civil discovery is requested under these circumstances, and should use its discretion to protect the strong public interest in the integrity of the criminal proceedings while also examining the possible countervailing interests that may be present in both the civil and criminal proceedings." *Id.*

Here, the Defendant admits his intention to use and has used civil discovery procedures available in this litigation as a discovery tool in the criminal case. He secured Plaintiff's medical records, pursuant to a release she signed that limited their use to this personal injury lawsuit, and produced them as exculpatory evidence in the criminal proceeding. He intends to depose witnesses here that he would not be entitled to depose in the criminal proceeding. The Court finds that Plaintiff has shown good cause for a protective order that would limit the use of any discovery obtained herein to this case, but such an order might well be ineffective because "Mr. Borbon may have two different attorneys in two different proceedings, but he is the same person." (Motion to Reconsider at 7.) Because resolution of the criminal proceeding is so close at hand, this Court finds that instead of issuing a protective order, a stay is more appropriate.

Given the mental fragility of the Plaintiff,[2] the risk of intimidating or harassing her is particularly high. This is a strong reason to stay her deposition because her distress might jeopardize the criminal trial. As the victim, she is the primary witness in the criminal case,

---

[2] The Court considered the expert opinion of Dr. Donnelly, but was, nevertheless, persuaded by the opinion of Plaintiff's treating physician, Dr. Crowder, that the Plaintiff's mental condition is extremely fragile and would be exacerbated if she is subjected to a deposition on the eve of the criminal trial.

4

and this Court does not want to risk compromising her testimony. Such a fragile witness may well have trouble testifying at trial, especially on cross-examination, therefore, the Court takes special care to ensure that any existing difficulties are not compounded by subjecting her to a civil deposition before the criminal trial. See e.g. *Deal*, at *10.

Additionally, judicial economy favors staying discovery here until after the criminal trial because a conviction may well have a dispositive effect on the question of whether or not the Defendant raped the Plaintiff.

The potential harm to the Defendant, especially the risk that the Government will fail to properly disclose its evidence in the criminal case, is limited by the criminal rules of procedure and the Constitution, but prejudice to the criminal proceeding is considerable, if the Defendant secures the depositions of the Government's witnesses, especially the Plaintiff/victim's deposition. The Court finds that since the stay is only for approximately two months, any prejudice to the Defendant from not going forward with the civil action is also limited. The Plaintiff has carried her heavy burden to make a strong showing why discovery should be stayed until after the trial as set on January 15, 2008.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion for Reconsideration (document 73) is DENIED.

DATED this 28th day of November, 2007.

David C. Bury
United States District Judge